UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-223 (NEB/DTS)

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

1. AIMEE MARIE BOCK,
4. ABDULKADIR NUR SALAH,
7. ABDIHAKIM ALI AHMED,
13. AHMED ABDULLAHI GHEDI,

        Defendants.

**GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANTS' OBJECTIONS TO REPORTS AND RECOMMENDATIONS**

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, Joseph H. Thompson, Matthew S. Ebert, Harry M. Jacobs, and Daniel W. Bobier, Assistant U.S. Attorneys, respectfully submits the following consolidated response to the defendants' objections to the Reports and Recommendations. Dkt. ##364–369.

**I.   THE DEFENDANTS' OBJECTIONS TO THE REPORTS AND RECOMMENDATIONS**

Defendants Aimee Marie Bock, Abdulkadir Nur Salah, Abdihakim Ali Ahmed, and Ahmed Abdullahi Ghedi, variously moved to dismiss the indictment, suppress evidence obtained during the execution of certain federal search warrants, and for a *Franks* hearing. On November 1, 2024, Magistrate Judge David T. Schultz issued two Reports and Recommendations (and several Orders) recommending (and ordering) denial of each of the defendants' motions. The defendants now object to the Magistrate Judge's recommendations.

1

A. **Defendant Ahmed Abdullahi Ghedi's Objections to the Reports and Recommendations (Dkt. ##364, 365)**

1. **Defendant Ahmed Abdullahi Ghedi's Motion to Suppress (Dkt. #364)**

Defendant Ahmed Abdullahi Ghedi objects to the Report and Recommendation recommending that his motion to suppress evidence from a search warrant be denied. Defendant Ghedi claims that "[t]he probable cause standard employed by the Magistrate Judge was unbelievably broad and sweeping[.]" Dkt. #364 at 3. But the R&R applied the same "totality of the circumstances" probable cause standard it applies in every review of a search warrant affidavit and subsequent review on a motion to suppress: a search warrant must set forth "sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place." Dkt. #354 at 33 (quoting *United States v. Notman*, 831 F.3d 1084, 1088 (8th Cir. 2016)).

Defendant Ghedi suggests that the Report and Recommendation found that "an ownership interest in the business [(namely, ASA Limited)] itself justified the email search." Dkt. 364 at 3. Ghedi fundamentally misapprehends the R&R's findings. The Report and Recommendation detailed not just Ghedi's ownership interest in ASA Limited, but also the reasonable inference that Ghedi's email account contained communications between co-conspirators communicating about the fraud. *See* Dkt. #354 at 41.

Defendant Ghedi also claims that applying the probable cause standard as the R&R did here "would expose the owner of any private business suspected of wrongdoing to invasive searches of his or her personal records." Dkt. #364 at 3. But

2

of course, that is not the case. The affidavit explains that Ghedi used ASA Limited to receive fraudulent proceeds and that he communicated via email with co-conspirators about the distribution of those proceeds. Such facts more than supported probable cause to authorize a search of ASA.

Finally, Ghedi contends that the R&R improperly concluded that he lacked standing to challenge the search of the commercial building located at 2722 Park Avenue South. Ghedi appears to suggest that because the Magistrate Judge noted Ghedi's standing deficiencies for the first time at the motion hearing, his motion should be immune to standing scrutiny.

But standing is a threshold issue. The burden of proving a reasonable expectation of privacy in the place searched falls squarely on the defendant moving to suppress. *See United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994). Ghedi acknowledges that he "did not provide any specific evidence of his ownership interest prior to the hearing[.]" Dkt. #364 at 2. Therefore, the R&R correctly recommends that Ghedi's motion to suppress the search of that property be denied for lack of standing.

**2. Defendant Ahmed Abdullahi Ghedi's Motion to Dismiss Counts from the Indictment (Dkt. #365)**

Defendant Ghedi objects to the Report and Recommendation recommending that his motion to dismiss multiple counts of the indict be denied. Ghedi takes issue with the R&R's "conceptions of how to fairly and objectively review the Indictment." Dkt. #365 at 5. But rather than explain why the R&R was purportedly incorrect, he merely rehashes the arguments made in his original motion.

Ghedi provides only one example of what he believes is a misapprehension in the R&R. He takes issue with the Magistrate Judge's view that the Indictment needs "to be read in conjunction with the general allegations that [Ghedi] was a knowing participant in the fraud scheme." Dkt. #365 at 5 (citing Dkt. #355).

Ghedi myopically focuses on one example provided in the R&R (paragraph 144 of the Indictment), while ignoring the rest of the analysis and explanation contained in the R&R. First, the reference to paragraph 144 was merely one example provided by the R&R. The objection does not wrestle with "the Indictment's detailed description of the fraud scheme." Dkt. #355 at 18.

Moreover, the R&R explained that the allegations in the Indictment that Ghedi created ASA Limited with co-conspirators, submitted implausibly high claims for reimbursement, received millions in fraud proceeds, and crated a shell company to hide those proceeds are facts sufficient to allege Ghedi's knowledge. Ghedi's objection does not argue otherwise.

Therefore, the R&R correctly recommends that Ghedi's motion to dismiss counts of the Indictment be denied.

### B. Defendant Abdulkadir Nur Salah's Objections to the Reports and Recommendations (Dkt. ##366, 367)

Defendant Abdulkadir Nur Salah objects to the Magistrate Judge's denial of three requests: to dismiss the indictment for lack of factual basis; to grant a *Franks* hearing; and to suppress evidence based on four-corners challenges to search warrants executed on Salah's home and email account. The R&R's conclusions should be adopted on each issue.

### 1. Defendant Abdulkadir Nur Salah's Motion to Dismiss the Indictment (Dkt. #367)

Defendant Abdulkadir Nur Salah renews his contention that the Indictment does not contain a factual basis sufficient to establish, for Counts 15 (conspiracy) and 20, 22, 24, and 40 (federal program bribery), mens rea to influence an official act before that act was taken. Dkt. #367 at 2 (citing *Snyder v. United States,* 144 S. Ct. 1947, 1959 (2024)). He is wrong. The Indictment charges Feeding Our Future with "operat[ing] a pay-to-play scheme, where individuals seeking to operate fraudulent sites under the sponsorship of Feeding Our Future had to kickback a portion of their fraudulent proceeds to Feeding Our Future employees." Dkt. #1 ¶ 31. The Indictment describes at length that Abdulkadir Nur Salah and others sought out Feeding Our Future's sponsorship *for the purpose* of participating in this scheme. That is, that Salah and others conspired "to obtain Federal Child Nutrition Program funds to pay bribes and kickbacks to Feeding Our Future employees in exchange for Feeding Our Future's sponsorship of their participation." *Id.* ¶ 148. The R&R correctly observed that those averments, read together, allege an agreement to pay bribes that predates Feeding Our Future's sponsorship of the Safari sites. Dkt. #355 at 22–23. That conclusion should be adopted.

### 2. Defendant Abdulkadir Nur Salah's Motion for a *Franks* Hearing (Dkt. #366)

Abdulkadir Nur Salah objects on three grounds to the R&R's rejection of his request for a *Franks* hearing.

#### a. Omission of Food Program Waivers

First, he contends that the affidavit omitted description of certain food-program waivers and that the R&R was wrong to reject such omission as grounds for a *Franks* hearing. The R&R rightly concluded, however, that even upon making assumptions in Safari's favor concerning the effect and application of those waivers, they at best "make[] the incredibly high number of meals the Safari Restaurant claimed to be serving slightly more plausible." Dkt. 353 at 22. Still, the objection doubles down on this argument, contending that the affidavit misleadingly portrayed Safari's claimed meal counts as too high to be believable. The facts stated in the affidavit speak for themselves—e.g., that Safari claimed shortly after joining the program to be serving 5,000 meals a day and that one of the sites claimed to be serving 2,000 meals a day in a town with a population of only 21,000, *see* Dkt. 353 at 34—but regardless, the R&R was right to note that Safari's large meal counts are but "one of many pieces of circumstantial evidence" of the fraud scheme. Dkt. 353 at 22. Even if the defendant could demonstrate that the affidavit's description of meal counts constituted a reckless or knowing misrepresentation (and he cannot), that still would do nothing to undermine the rest of the affidavit's extensive factual presentation establishing probable cause.

Relatedly, Abdulkadir Nur Salah also objects that the R&R noted his failure to present "affidavits or other reliable evidence" that the affidavit knowingly or recklessly omitted the waivers. Dkt. 353 at 21. It is unclear why. The R&R found that the challenged omissions did not give rise to the inference of recklessness and that, while the defendant could have provided other competent evidence of recklessness (if

6

any existed), he did not so do. The defendant thus failed to carry his "substantial" burden required under *Franks*, and the R&R's rejection of his request for a hearing should accordingly be adopted. *See Franks v. Delaware*, 438 U.S. 154, 155–56 (1978).

### b. Presentation of Safari's Expenditures

Abdulkadir Nur Salah presented the Magistrate Judge with an accounting purporting to show that the Safari Restaurant paid over $2 million to food suppliers. He maintains that such purported payments undermine the affiant's claim that Safari's fraud proceeds chiefly went to enrich Salah and his co-defendants (as opposed to toward food purchased for children). But the R&R evaluated that evidence in detail and correctly concluded it fell short of the "substantial preliminary showing" required to warrant a *Franks* hearing. The R&R concluded: (1) Salah provided no evidence that the entities that received about $1.5 million of the purported $2 million actually provided any food or indeed were in the food-distribution business at all;[1] and (2) the marginal funds purportedly provided to recognizable entities, like Costco and Sysco, pale in comparison to Safari's more than $10 milliom in claims, making such expenses (even if assumed to be purchases of food for distribution to children) immaterial to probable cause. Dkt. 353 at 25–26.

Salah makes two further, related objections. The first is that the affidavit did not detail certain of Safari's other expenses, which, he says, may have been for

---

[1] Salah wrongly suggests that the R&R discounted the entities that received this $1.5 million because all three have been identified as entities embroiled in the fraud scheme. Rather, the R&R concluded that from the evidence submitted, those entities may have provided food or may have been shell companies that did not. Dkt. 353 at 26. Such ambiguity does not meet the *Franks* standard.

operating or management expenses. The second is that the affidavit did not detail certain funds transferred from the Safari accounts to entities that operated food sites. The first objection fails because as explained by the Magistrate Judge, Salah offered "no reliable evidence … to explain what the payments were for." *Id.* at 27. The second objection fails because "the affidavits more than adequately connect these entities to a common fraud scheme." *Id.*

Ultimately, the defendant objects that the R&R did not "sufficiently grapple" with the affidavit's representations concerning what proportion of Safari's funds were spent on food. The R&R's thorough analysis disproves that claim. The R&R summarizes after such analysis: "it was reasonable for [the affiant] to conclude … that the Safari Restaurant spent only a small fraction of the federal child nutrition funds serving children, while transferring millions to Safari Restaurant owners and associates." *Id.* at 27–28. The evidence the defendant invokes would not have affected the probable cause determination. *Id.* And even if such evidence could have affected that determination, the defendant identifies no evidence that such omissions were deliberately made with intent to mislead.

### c.  Omission of Surveillance Footage

Abdulkadir Nur Salah next objects that when presented with ambiguous video footage of some food deliveries to Safari (which operated as a restaurant independent of the food program), the R&R refused to accept it as the "substantial preliminary showing" required to warrant a hearing. The *Franks* standard is not met by introduction of *any* evidence that *may* contradict *some* of an affidavit. If that were so, a *Franks* hearing would be required in virtually every case. But the Eighth Circuit

8

has held that *Franks* hearings are appropriately granted only in "very limited circumstances." *United States v. Ozar*, 50 F.3d 1440, 1445 (8th Cir. 1995). The R&R correctly observed that to come close to being relevant to the probable cause finding, the footage would need to show sufficient deliveries to support Safari's claims of serving tens of thousands of meals *each month*. Dkt. 353 at 28–29. The cited footage does not show as much and, even if the footage weren't merely ambiguous, the defendant makes no showing that omission of those videos from the affidavit was deliberate or reckless. *Id.*

### 3. Defendant Abdulkadir Nur Salah's Four-Corners Challenges to the Search Warrants (Dkt. #366)

Before the Magistrate Judge, Abdulkadir Nur Salah made four-corners challenges to the warrants authorizing search of his home and his email. He objects to the rejection of those challenges.

As for the house warrant, Salah suggests the only facts linking the house to the charged scheme was his "listing [his] home address on business documents." Dkt. #366 at 8. Not so. First, the affidavit presented extensive details supporting the conclusion that the Safari Restaurant owners (including Salah) and associates knowingly submitted false claims, banked millions in fraud proceeds, and used those funds to buy cars and real estate. Dkt. #353 at 34–35. Second, the affidavit detailed at length how Salah was involved in the scheme, including by receiving fraud proceeds and acting as a signatory "on the Safari Restaurant bank account that transferred $3mm in (mostly) federal child nutrition funds" to his co-conspirators. *Id.* (citing Dkt. 188-1 (Affidavit)). Third, the affidavit explained that Salah created two

shell companies for use in the scheme *and that he identified his home address as the office and address for those same companies. Id.* at 35. Fourth, the affidavit explained that Salah received mail at his home addressed to at least one of those entities and, that based on the affiant's training and experience, participants in such fraud schemes often maintain records of assets and transactions at their residences. *Id.* at 35-36 (citing *United States v. Keele*, 589 F.3d 940, 943–44 (8th Cir. 2009) (relying on affiant's experience with criminal activity); Dkt. #188-1 (affiant's knowledge from relevant training and experience)); *contra* Dkt. #366 at 8 (defendant inaccurately stating affidavit did not include language about the affiant's experience). The R&R considered these facts in detail and correctly rejected Salah's challenge.

As for the email warrant, Salah's objection is even weaker. As the R&R noted, the affidavit presented extensive connections between Salah's email account and the fraud scheme. Dkt. #353 at 36–37. Such connections include: Salah listing the email account in connection with one of the shell companies he created to further the scheme; Salah using it in connection with the purchase of a building for $2.8mm, funded largely with fraud proceeds; and submission of documents to co-defendant Bock pertaining to purported expenses incurred in the course of executing the scheme. *Id.* The R&R correctly found that those facts were "more than enough" to establish probable cause. Dkt. #353 at 37.

The R&R's rejections of the defendant's challenges to these warrants should be adopted. The affidavits more than established probable cause and, in all events, the affidavits are not "so lacking in indicia of probable cause as to render official belief in

10

its existence entirely unreasonable"—entitling the execution of these warrants to good-faith treatment under *United States v. Leon*, 468 U.S. 897 (1984).

### C. Defendant Aimee Marie Bock's Objections to the Report and Recommendation (Dkt. #368)

Defendant Aimee Marie Bock moved the Magistrate Judge to dismiss the indictment, Dkt. 194, and to hold a *Franks* hearing, Dkt. #198. The Magistrate Judge denied both motions, and now Bock objects to the Magistrate Judge's *Franks* order. She does not submit an objection to the Magistrate Judge's recommendation denying her dismissal motion. As to the denial of her *Franks* motion, Bock makes three arguments.

First, Bock contends the Magistrate Judge was wrong to deny her motion to dismiss the indictment for lack of factual basis. She contends that the only inculpatory fact that "pertains directly to [her] is the sale of the Southcross site [by Bock to the entity behind Safari Restaurant] for $310,000." Dkt. #368 at 4. Bock is wrong, as explained at length in the government's original, responsive briefing and as laid out in detail in the R&R. The indictment's language need only "track[] the statutory language." *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008). The R&R correctly found that the indictment here does so, Dkt. #355 at 15 & n.4, which ends the inquiry. Even so, the R&R found that the Indictment goes further:

> [The Indictment] provides a detailed account of Bock's personal involvement in the fraud scheme e.g., [Affidavit] ¶¶ 68–69 (submitting site applications), ¶¶ 33–34 (providing false assurances to the MDE), contains the date and description of each e-mail forming the basis for a wire fraud count, *id.* ¶ 145, outlines a "pay-to-play scheme," where sponsored sites were required to kickback a portion of their proceeds to Feeding Our Future employees in exchange for sponsorship, *id.* ¶¶ 31,

11

> 148–78, and describes the $310,000 payment from Safari Restaurant owners to Bock, *id*. ¶¶ 141–42, 178, 180.

Dkt. #355 at 15-16; *accord* Dkt. #258 at 25-28 (government's submission detailing the Indictment). The R&R concluded that such allegations were "more than enough to charge Bock with each count brought against her." *Id*. That conclusion was correct, and it should be adopted.

Second, Bock argues the R&R failed to acknowledge that the administrative fees charged by Feeding Our Future were not directed to Bock personally. Dkt. #368 at 4. But the R&R squarely considered that contention and rejected it as immaterial: "Regardless, none of the offenses charged are premised on the illegality of Feeding Our Future's administrative fees. The wire-fraud counts are premised on a scheme to claim reimbursements for meals never served. And the federal-programs bribery counts are premised on an agreement of payments for sponsorship." Dkt. #355 at 16. That conclusion was also correct, and it should be adopted.

Third, Bock contends that Count 15 (conspiracy to commit federal programs bribery) and Counts 16-40[2] (federal program bribery) lack the factual basis necessary to support a *quid pro quo*. Dkt #368 at 5–6. As discussed above, the R&R rightly rejected this argument. *See supra* at I.B.1 (rejection of same argument raised by Abdulkadir Nur Salah); Dkt. #355 at 21–23 ("[T]he Indictment alleges a quid pro quo scheme of money for sponsorship" whereby "Feeding Our Future operated a pay-to-play scheme, where individuals seeking to operate fraudulent sites … had to kickback

---

[2] Of these, only Count 40 is charged against Bock.

12

a portion of their fraudulent proceeds to Feeding Our Future employees."). The Indictment more than alleges a sufficient factual basis for the charges in Counts 15-40, and Bock's argument to the contrary should be rejected.

### D. Defendant Abdihakim Ali Ahmed's Objections to the Report and Recommendation (Dkt. #369)

Defendant Abdihakim Ali Ahmed objects to the Report and Recommendation denying his motion to suppress the fruits of a federal search warrant for the contents of his email account. He objects to four conclusions from the Report and Recommendation. First, he contends that the totality of information in the search warrant affidavit did not provide probable cause that evidence of the fraud scheme would be found in his email account. Second, he argues that the particularity requirement was not satisfied by the affidavit. Third, he objects to the application of the *Leon* good-faith doctrine as an alternative ground for denying her motion to suppress. Fourth, he objects to the denial of a *Franks* hearing.

In his objections, Abdihakim Ahmed raises the same arguments from the previously submitted briefing. For the reasons explained in the government's post-hearing briefing, the Magistrate Judge's well-reasoned Report and Recommendation correctly recommended that Abdihakim Ahmed's motion to suppress be denied.

## II. CONCLUSION

The government respectfully requests that the Court deny the defendants' objections and adopt the Magistrate Judge's Reports and Recommendations.

December 2, 2024                                    Respectfully submitted,

                                                    ANDREW M. LUGER
                                                    United States Attorney

                                            BY:   /s/ *Joseph H. Thompson*
                                                    JOSEPH H. THOMPSON
                                                    MATTHEW S. EBERT
                                                    HARRY M. JACOBS
                                                    DANIEL W. BOBIER
                                                    Assistant U.S. Attorneys