**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**CRIMINAL NO: 22-CR-223 (NEB/DTS)**

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Aimee Marie Bock (1),<br><br>    Defendant. | **DEFENDANT AIMEE BOCK'S<br>MOTION IN LIMINE NO. 5** |

## INTRODUCTION

Defendant Aimee Marie Bock (hereinafter "Defendant"), through her counsel, Kenneth Udoibok, respectfully moves this Court to preclude the Government from introducing certain evidence and making certain arguments. Bock reserves the right to file additional motions in limini once she has reviewed the Government's recently produced witnesses and exhibits list.

## MOTION IN LIMINE NO. 5
### (Hadith Yusuf Ahmed)

The Government should be precluded from calling Hadith Ahmed as a witness because his testimony is unreliable, he refused to answer questions from defense, and the Government failed to produce material impeachment evidence. At a minimum, Hadith should be precluded from offering any testimony about Feeding Our Future's operations generally or how any claims or sites were reviewed or handled specifically.

1

For over three years, the Government has had in its possession Ahmed's cell phone that he was issued while at Feeding Our Future and his iPad, which tracked his interactions with various sites and other Feeding Our Future employees. The devices contain exculpatory and impeachment information showing that all claims submitted through Feeding Our Future were subjected to the same administrative process that involved numerous employees and individuals. The information on those devices conclusively shows that Bock did not in any way, shape, or form facilitate any claims getting special treatment or avoiding Feeding Our Future's typical checks. The cell phone and iPad also likely contain documents showing that Ahmed was actively hiding the fraud he personally committed from Bock and Feeding Our Future. Nonetheless, the Government chose not to produce Ahmed's cell phone or his iPad, and with less than a month before trial, Bock had not received or had time to review those devices.

It is also not clear if the Government has Ahmed's Feeding our Future emails, but Bock has been requesting them for some time and the Government has yet to provide them or categorically state it never bothered to obtain them.

The significance of the Government's failure to produce these documents cannot be overstated. For example, during the first trial, Ahmed testified that he was given a $45,000 kickback from Community Enhancement Services:

####

[blank]

> HADITH AHMED - DIRECT (JACOBS)                                2823
>
> A. Mizal Consulting.
> Q. And who is this check from?
> A. Liban Y. Alishir.
> Q. Who is Mr. Alishir?
> A. It was someone that also involved in the food fraud scheme.
> Q. Okay. And this check has a memo line, and it says, "Consultation." Do you see that?
> A. Correct, I see.
> Q. Was this $45,000 payment for consultation?
> A. It was a kickback.
> Q. What did he get for $45,000?
> A. I help him submit -- when he submits meal counts, I will not take a look at it. I will just straightly forward it to claims, Feeding Our Future claims, or put Aimee's desk, on top of it, and then I will help her submit to MDE.
> Q. Would you send a site supervisor out to that location?
> A. No.
> Q. Would you scrutinize the meal count claims?
> A. No.
> Q. Would you put those claim sheets on the top of the stack for Aimee Bock?
> A. Yep.
> Q. What was important about that?
> A. To be processed right away, to get paid right away.

Tr. 2823:1-25.

Ahmed explained that in exchange for the "kickback," he placed Community Enhancement Services' claim on Bock's desk and that she approved the claim without submitting it through the typical Feeding Our Future claims process. *Id.* The limited documents the Government produced for the first time on December 12, 2024, however, conclusively demonstrate that was not true. The documents show that the claim was submitted through the typical Feeding Our Future process, that it was reviewed and processed by several Feeding Our Future employees, and that Bock had nothing to do with the claim.

Similarly, during the first trial, the Government elicited testimony from Ahmed that Feeding Our Future employees were not doing site visits:

```
BY MR. JACOBS:
Q.  In this time frame of the end of 2020 and into 2021,
what were site supervisors actually doing for Feeding Our
Future?
A.  We were not doing anything.  We were not going sites.
Q.  When you say "not doing anything," can you tell the jury
what you mean.
A.  We were not visiting sites.  We were not inspecting.  We
were just doing our own thing.
Q.  Is that what you mean by no checks and balances?
A.  Yes.
Q.  Why were site supervisors not visiting sites?
A.  Because the site supervisors knew the site owners, and
we were all taking our kickbacks at that time.
```

4

Tr. 2777:19-2778:7.

As Bock has only now learned from media reports, the Government had in its possession Ahmed's and other Feeding Our Future employees' devices that proved that was not true. The devices the Government chose not to produce establish that Ahmed and other Feeding Our Future employees did numerous site visits.

For example, on April 15, 2021, a device shows that two different Feeding Our Future employees visited Safari. The devices also show that Feeding Our Future vigorously invested possible concerns, and that Ahmed himself conducted monitoring visits and invited others to go with him:

> **Hani Mohamud**
> Also I will be doing full monitor for ASA Limited tommrow morning 9 Am Ikram will be monitoring with me this site I need to pay attention more ..
> 5:41 PM

> **Hadith Feeding Our Future**
> Doing a monitoring tomorrow, who wanna tag with me?
> 9:57 PM



Zara Frost: *https://feedingourfuture.substack.com/p/doubt-and-deception-examining-the*

Again, the Government made an intentional and deliberate decision not to produce Ahmed's devices that track his activities while at Feeding Our Future. By deciding to not produce his devices and to only make a limited production of Monday.com for the first time less than two months before trial, the Government decided not to place Ahmed's activities while a Feeding Our Future at issues in this trial. The Government cannot decide not to produce evidence about what Ahmed did at Feeding Our Future and how claims were processed and then call Ahmed at trial to elicit testimony about what he did at Feeding Our Future and how claims were processed.

It is an abuse of all Defendants' constitutional rights for the Government to elicit testimony from Ahmed that Feeding Our Future employees did not conduct site visits when it knows that testimony is false and contradicted by terabytes of data the Government chose not to produce.

The Government should also be precluded from calling Ahmed as a witness because he was clearly not credible, and he refused to answer questions from defense counsel. During his cross-examination, Ahmed testified over 80 times that he did not know or did not recall basic information. His testimony was so bad, it led counsel to ask if anything had happened to him overnight that had caused him to forget everything, including his testimony from the previous day:

```
Q.   Did something happen to you last night that causes you
not to be able to remember things today?  And I'm seriously
asking --
         MR. JACOBS:  Objection, Your Honor.
         MR. GOETZ:  I'm seriously asking that question.
         MR. JACOBS:  Objection, Your Honor.
         THE COURT:  I'm going to overrule it.
         Can you answer the question?
         THE WITNESS:  I will not answer that question,
sir.
         MR. GOETZ:  You have to answer.
         THE COURT:  Sir, I'm sorry, the question was, Did
something happen to you last night?  That's all that --
         THE WITNESS:  No.
         THE COURT:  All right.  Continue, please.
```

Tr. 3126:24-3127:13.

The Government has an obligation to not knowingly elicit false or misleading testimony, and this Court can safeguard the sanctity of the trial proceedings by precluding evidence that lacks credibility. *See, e.g.*, *Napue v. Illinois*, 360 U.S. 264, 269-70 (1959) (holding that the government may not introduce or elicit testimony known to be false); *Giglio v. United States*, 405 U.S. 150, 154 (1972) (holding that the government may not present false evidence nor allow false testimony to stand uncorrected); *United States v. White*, 724 F.2d 714, 716–17 (8th Cir. 1984) ("A prosecutor may not suppress material, exculpatory evidence, introduce or elicit testimony known to be false, or allow false testimony to stand uncorrected." (*internal citation omitted*).

The Government should be precluded from calling Hadith Ahmed as a witness at trial because it chose not to produce material impeachment evidence and because his testimony lacks credibility.

|  |  |
|---|---|
|  | Respectfully Submitted |
|  | **KENNETH UBONG UDOIBOK, P.A.** |
| January 13, 2025 | /s/Kenneth U. Udoibok |
|  | Kenneth U. Udoibok (#0262523) |
|  | Flour Exchange Building, Suite 5010 310 Fourth Avenue South |
|  | Minneapolis, MN 55415 |
|  | Phone: (612) 808-6031 |
|  | k@kenulaw.com |
|  | **ATTORNEY FOR DEFENDANT AIMEE MARIE BOCK** |