UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Criminal No. 22-CR-223-NEB-DTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | DEFENDANT'S MOTION FOR |
| V. ) | JUDGMENT OF ACQUITTAL |
| ) | |
| SALIM AHMED SAID (3), ) | |
| ) | |
| Defendant. ) | |

**MOTION**

Defendant Salim Ahmed Said, by and through his attorney, Adrian S. LaFavor-Montez, respectfully moves the Court for an order setting aside the verdict of guilty returned on Counts 1, 2, 5, 8, 12, 15, 16, 17, 18, 19, 32, 34, 36, 37, 38, 41, 42, 44, 51, 52, and 57 of the Indictment, and entering a judgment of acquittal, on the grounds that the evidence in the case is insufficient to sustain a conviction of such offenses.

**FACTS**

Said immigrated to the United States in 2004. At age 14, he started working at Safari Restaurant as a busboy. Brothers Sade and Jamal Hashi owned Safari at that time. Abdulkadir Salah ("Salah") also worked at Safari. A couple years later, Said moved to Indiana. He returned to Minnesota in 2014 and was hired at Safari to purchase and pick up food and supplies. At that time, the restaurant was owned by Jamal Hashi, Abdirahman Ahmed, and Salah. Total Financial Solutions, owned by brothers Salah and Ahmed Sharif Omar-Hashim ("Omar-Hashim"), managed the finances for Safari. In that capacity, Salah went to the restaurant once a week to pick up

1

invoices and receipts. Said acquired Jamal Hashi's ownership share in Safari around 2016 and became the on-site restaurant manager. As the manager, Said oversaw employees, organized large events, coordinated catering, and purchased and picked up food and supplies.

Safari Restaurant was located on 4th and Lake Street, in an area where a predominant portion of the Minneapolis Somali population resides. It had a restaurant in the front of the building and a large event space in the back. The event space had the capacity to hold several hundred people. Before COVID-19, the restaurant portion was often very busy. On the weekends, large gatherings such as quinceañeras, weddings, political events, parties, and concerts took place in the event space. Safari provided hundreds to over a thousand meals for these gatherings. In addition to large events and the restaurant running simultaneously, Safari also provided outside catering. Before the pandemic, the kitchen staff at Safari had the capacity to make thousands of meals a day.

In early 2020, COVID-19 shut down Safari. Said canceled weddings that were booked and had to decide what to do with the thousands of dollars' worth of food at the restaurant. Said and his employees decided to give out the food for free. Mohamed Liban, a Somali social media influencer, posted about the food distribution on his Snapchat. For several days, Safari distributed free meals to anyone who showed up.

Said was approached by Shafi Qanyare, who introduced Said to the Feeding Our Future program. Shafi said Salah sent him. Shafi informed Said that in exchange for providing free meals for children, food program participants could make a profit. Shafi explained the small portion sizes, how to submit claims, the COVID-19 waivers, and other mechanics of the food program. In April 2020, Said signed an application to participate in the food program under Feeding Our Future's sponsorship. Safari, which had a longstanding capacity to serve thousands of meals and was already giving out food for free just days prior, quickly began participating in the program.

Cooks started preparing food at night into the early hours of the morning, meals in buffet heaters were packed into aluminum trays holding five to six meals, the trays were stacked on tables and in food warmers located throughout the event space, and the trays were delivered to cars parked outside the restaurant. Adults picked up food for the children, and would sometimes pick up food for multiple families and/or multiple days at a time. Meals were also delivered to nearby neighborhoods, such as Riverside Plaza. During the early months of the program, Said developed a roster of children organized by family name. It was so busy that Said had to acquire traffic permits from the city and hire law enforcement to direct traffic. During those first few months, Said signed all the rosters and meal counts. Around that time, Abdikerm Eidleh replaced Shafi as the liaison between Safari and Feeding Our Future.

When the first payments from Feeding Our Future came in, Salah was interested in becoming more involved in the restaurant. His company Total Financial Solutions was still doing the books for Safari. Most of the time, Total Financial Solutions would pre-print checks and Said would sign them at Salah's request. Said trusted Salah's management of the finances. In the fall of 2020, Said became less involved in the day-to-day operations at Safari. Salah began signing many of the meal counts, and by mid-2021, Said was not signing any. Said eventually opened Salim Limited LLC at the suggestion of Salah. Said also learned that Eidleh was performing consulting work for Safari, and ordered and signed checks to Eidleh for that work.

Said invested in several companies that participated in the food program and received returns on those investments. Those companies include ASA Limited, Olive Management (owned by Salah's brother, Omar-Hashim), Brava Restaurant, Horseed Management, and Tunyar Trading. Said did not regularly go to those food sites and did not sign any meal claims for the sites. Based on Mohamed Liban's Snapchat videos advertising food distribution, Said believed those sites were

distributing large quantities of food, just as Safari had been under Said's leadership in 2020. As expected based on Shafi's representations about the food program, Said made a profit. In part, he used that money to purchase two vehicles, two commercial properties, and a home.

On September 13, 2022, the Government indicted Said, alleging the following counts: Count 1 (Conspiracy to Commit Wire Fraud); Counts 2, 5, 8, and 12 (Wire Fraud); Count 15 (Conspiracy to Commit Federal Programs Bribery); Counts 16, 17, 18, 19, 32, 34, 36, 37, and 38 (Federal Programs Bribery); Count 41 (Conspiracy to Commit Concealment Money Laundering); and Counts 42, 44, 51, 52, and 57 (Engaging in Monetary Transactions in Property Derived from Unlawful Activity). Trial began on February 3, 2025. On March 19, 2025, the jury returned a verdict of guilty on all counts.

## ARGUMENT

A defendant may move for a judgment of acquittal within 14 days after a guilty verdict. Fed. R. Crim. P. 29(c)(1). A judgment of acquittal must be entered if the evidence presented at trial is insufficient to sustain a conviction. Fed. R. Crim P. 29(a); *United States v. Boesen*, 491 F.3d 852, 855 (8th Cir. 2007) (citing *United States v. Ellefson*, 419 F.3d 812, 816 (8th Cir. 2005)). A judgment of acquittal is required "if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Cacioppo*, 460 F.3d 1012, 1021 (8th Cir. 2006) (quoting *United States v. Gomez*, 165 F.3d 650, 654 (8th Cir. 1999).

In relevant part, the wire fraud statute requires the Government to prove that the defendant: (1) acted with the intent to defraud; and (2) either intentionally created a scheme to defraud or participated in such a scheme with knowledge of its fraudulent nature. 18 U.S.C. § 1343. At trial, the Government failed to prove these elements.

Regarding Count 2, by the time ASA Limited opened in the fall of 2020, Safari had already been operating a legitimate food site under Said's leadership. The Defense's evidence showed that Safari was in fact preparing, packaging, and distributing a large quantity of meals during the spring and summer of 2020. Said invested in ASA Limited so that it too could participate in the food program. However, Said's involvement in ASA Limited ended there. The Government's own evidence showed that Said never signed a single meal count for ASA Limited. Said had no knowledge of his co-owners committing fraud at ASA Limited and did not intend for ASA Limited to be a fraudulent food site. The opposite was true; Said saw on Mohamed Liban's social media that ASA was operating in a way similar to Safari. Said trusted based on what he observed that meals were being served out of ASA Limited.

As for Count 8, Said's involvement in the day-to-day operations at Safari phased out around February 2021. This is established in the Government's own meal count sheet exhibits, in which Said stopped signing meal counts altogether by the spring of 2021. Said trusted that his business partner Salah would continue running the food program operation like Said had throughout 2020. At the time of Said sending the February meal counts to Eidleh, Said had no knowledge that any meal counts going from Safari to Feeding Our Future were fraudulent or inflated. Relying on what he experienced at the beginning of the food program and Mohamed Liban's Snapchat videos of food being prepared, packaged, and distributed at Safari, Said trusted that these meal counts he sent to Eidleh were legitimate.

With respect to Count 12, the evidence showed that Said had nothing to do with the creation of the ASA Roster sent from Abdihakim Ahmed to Bock in November 2021. The Government's evidence failed to prove that Said knew about the creation of a fake roster, asked anyone to create a fake roster, or intended for a fake roster to be sent to Feeding Our Future or elsewhere. Further,

there was no reason for Said to need a fake roster, as he had real children's names and other biological information from the rosters he manually created in the early days of the food program.

Finally, with respect to Count 5, the Government presented no evidence that Said knew about or acquiesced in the sending of the "For-Profit Restaurant Clarifications" email sent by Aimee Bock to the Minnesota Department of Education. Therefore, the evidence is insufficient to sustain the conviction on Counts 1, 2, 5, 8, and 12.

A person commits money laundering only if they know at the time of the financial transaction that the money represents the proceeds of some form of unlawful activity. 18 U.S.C. § 1956. The Government has failed to prove that Said had the requisite knowledge to commit money laundering. As outlined above, Said did not act with intent to defraud, devise a fraudulent scheme, or participate in a scheme he knew to be fraudulent. Said opened Salim Limited LLC at the suggestion of his business partner, who Said trusted to give sound advice regarding business decisions. Therefore, the evidence is insufficient to sustain the conviction on Count 41.

The federal bribery statute, 18 U.S.C. § 666, criminalizes bribes, not gratuities. *Snyder v. United States*, 144 S. Ct. 1947 (2024). "[B]ribes are payments made or agreed to *before* an official act in order to influence the official with respect to that future act." *Id*. at 1951 (emphasis in the original). On the contrary, gratuities are payments made *after* an official act has already taken place without any *quid pro quo* agreement made before the official act. *Id*. at 1951-52. At trial, the Government failed to prove that Said took any action to corruptly influence an official act before the act took place. Specifically, every bribery count occurred after Said had already signed the application for Safari to participate in the food program under Feeding Our Future's sponsorship. The Government only proved that Said signed checks to Eidleh's entities after Safari had already been sponsored by Feeding Our Future for many months. The Defense established that Said made

6

payments to Eidleh for purported consulting work, not to ensure that Safari could continue its participation in the food program. Therefore, the evidence is insufficient to sustain the conviction on Counts 15, 16, 17, 18, 19, 32, 34, 36, 37, and 38.

Finally, because Said did not have the requisite intent to commit wire fraud, the evidence is insufficient to establish that Said engaged in money transactions in property derived from unlawful activity under 18 U.S.C. § 1957. Based on representations made to Said by Shafi during their first meeting regarding the food program, Said believed that he could make a profit in the food program. Once he made such profits, he used that money to purchase cars, commercial properties, and a home, just as he would with profits made outside of the food program. Therefore, the evidence is insufficient to sustain the conviction on Counts 42, 44, 51, 52, and 57.

## CONCLUSION

For the foregoing reasons, the evidence presented at trial is insufficient to sustain a conviction on all counts. Therefore, Salim Said respectfully requests that the Court grant his motion for a judgment of acquittal.

Dated:  March 31, 2025					Respectfully submitted,

								COLICH & ASSOCIATES


								*/s/ Adrian S. LaFavor-Montez*
								Adrian S. LaFavor-Montez
								Attorney ID 398434
								Attorney for Defendant Salim Said
								420 Lumber Exchange Building
								10 South Fifth Street
								Minneapolis, MN 55402
								Phone:  (612) 333-7007
								amontez@colichlaw.com