UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. AIMEE MARIE BOCK

Defendant.

Case No. 22-cr-223 (NEB/DTS)

MOTION FOR PRELIMINARY
ORDER OF FORFEITURE

The United States of America, through Daniel N. Rosen, United States Attorney for the District of Minnesota, and Craig R. Baune, Assistant United States Attorney, respectfully moves this Court for a Preliminary Order of Forfeiture that includes: (1) directly traceable assets; (2) a $5,241,522.79 money judgment forfeiture pursuant to 18 U.S.C. § 981(a)(1)(c), 28 U.S.C. § 2461(c) and Fed. R. Crim. P. 32.2; (3) a General Order of Forfeiture pursuant to Fed. R. Crim. P. 32.2(b)(2)(C); and (4) an order authorizing discovery to locate assets subject to forfeiture.

BACKGROUND

On September 13, 2022, a Grand Jury in the District of Minnesota returned an Indictment against Aimee Marie Bock and others. ECF No. 1. The Indictment contained Forfeiture Allegations providing notice the United States sought forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) of any property, real or personal, constituting or derived from proceeds traceable to Counts 1-40. *Id*.

On March 19, 2025, following a lengthy trial, a jury found Bock guilty on all counts against her: one count of Conspiracy to Commit Wire Fraud (Count 1); four

counts of Wire Fraud (Counts 2, 4, 5, 12); one count of Conspiracy to Commit Federal Programs Bribery (Count 15); and one count of Federal Programs Bribery (Count 40). ECF No. 581.

The wire fraud conspiracy concerned a massive fraud scheme through which Bock conspired to, among other things, defraud the government through the submission and payment of claims that falsely asserted various entities were entitled to reimbursement for meals they purported to have served to needy children. *See* Declaration of Pauline Roase ("Roase Dec."), Ex. A). The government introduced detailed evidence that the defendants, directly and through their corporate entities, collectively obtained millions and millions of dollars from the fraud scheme and conspiracy.

Aimee Bock was the founder and executive director of Feeding Our Future ("FOF"). As shown at trial, she was the leader of this conspiracy. She enrolled each of the FOF sites into the federal child nutrition program, and many of those sites submitted daily fraudulent meal counts falsely purporting they served meals to thousands of children per day. Bock submitted those false invoices and other bogus documentation to the Minnesota Department of Education, causing hundreds of millions of dollars of fraud proceeds to be paid out to FOF, which distributed them to participants in the fraud scheme. Bock controlled FOF's bank account, which received those fraud payments. She distributed the proceeds of those payments to herself and her co-conspirators. Bock controlled who participated in the conspiracy, set the price for their participation, and directed where the fraud proceeds would be paid.

Bock obtained, personally and through FOF, substantial remuneration for her participation in the fraud scheme. As set forth below and discussed at trial, she received a $310,000 bribe in the form of an alleged payment for a supposed daycare center that lacked children or employees. Before that supposed daycare was sold, FOF paid the rent for that site for Bock's ultimate financial benefit. She solicited and received additional kickbacks from co-conspirators through "School Age Consultants." She also funneled money to and through her boyfriend and his LLC, which they used to buy her a Porsche and various items of personal property, including jewelry and a Louis Vuitton purse. And finally, the $3,506,066.80 seized from FOF must be included in Bock's forfeiture order because it constitutes proceeds of Bock's fraud scheme.

## ARGUMENT

### I.    A PRELIMINARY ORDER OF FORFEITURE SHOULD BE ENTERED.

#### A. Legal Standard

The United States seeks a Preliminary Order of Forfeiture pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure. Rule 32.2(b) provides:

(b) Entering a Preliminary Order of Forfeiture.

(1) Forfeiture Phase of the Trial.

(A) Forfeiture Determinations. As soon as practical after a verdict or finding of guilty . . ., the court must determine what property is subject to forfeiture under the applicable statute. If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense.

(B) Evidence and Hearing. The court's determination may be based on evidence already in the record, including any written

plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable. If the forfeiture is contested, on either party's request the court must conduct a hearing after the verdict or finding of guilty.

(2) Preliminary Order.

(A) Contents of a Specific Order. If the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria. The court must enter the order without regard to any third party's interest in the property.. . .

Criminal forfeiture is a part of sentencing; it is not a substantive element of the offense. *Libretti v. United States*, 516 U.S. 29, 38-39 (1995). As such, the preponderance of the evidence standard of proof applies. *United States v. Huber*, 462 F.3d 945, 949 (8th Cir. 2006); *see also, e.g., United States v. Peithman,* 917 F.3d 635, 651 (8th Cir. 2019).

Because the governing statutes include compulsory terms, forfeiture is mandatory. *United States v. Williams,* 720 F.3d 674, 702 (8th Cir. 2013) (differentiating "shall" from "may" in forfeiture statutes). The plain language of 28 U.S.C. § 2461(c) mandates forfeiture when a defendant is convicted of an offense giving rise to forfeiture. *Id.* ("If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case. . .") (emphasis added); *see also United States v. Blackman*, 746 F.3d 137, 143 (4th Cir. 2014) ("The word 'shall' does not convey discretion").

4

Moreover, "Forfeiture is mandatory even when restitution is also imposed." *Id.*; *see also United States v. Newman*, 659 F.3d 1235, 1241 (9th Cir. 2011) (defendant, pursuant to 18 U.S.C. § 982(a)(2), is "not entitled to a credit for the amount that he had repaid toward the fraudulently obtained loan."); *United States v. Adetiloye*, 716 F.3d 1030, 1041 (8th Cir. 2013) ("Restitution is loss based, while forfeiture is gain based.") (citations omitted). Although forfeiture and restitution are separate aspects of a criminal sentence, forfeited assets are often used to compensate criminal victims through the remissions process authorized by 28 C.F.R. Part 9.

Third-party claims to forfeitable property are addressed in an ancillary proceeding and are not at issue at this stage of the forfeiture process. *See* 21 U.S.C. § 853(n) (as incorporated by 28 U.S.C. § 2461(c)); Fed. R. Crim. P. 32.2(c).

## B. Forfeiture Authority

Bock has been convicted of Wire Fraud and Wire Fraud Conspiracy in violation of 18 U.S.C. §§ 371 and 1343, and of Conspiracy to Commit Federal Programs Bribery and Federal Programs Bribery in violation of 18 U.S.C. §§ 371 and 666(a)(1)(B) and (a)(2). As a consequence, 18 U.S.C. § 981(a)(1)(C) mandates forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense."[1]

---

[1] Pursuant to 18 U.S.C. § 1956(c)(7)(A), the term "specified unlawful activity" includes any act or activity constituting an offense listed in section 1961(1). The offenses listed in section 1961(1) include wire fraud. Although 18 U.S.C. § 981(a)(1)(C) is a civil forfeiture provision, 28 U.S.C. § 2461(c) authorizes criminal forfeiture when a

Proceeds of a wire fraud scheme include all gross receipts of the scheme. *See, e.g., United States v. Simmons,* 154 F.3d 765, 770-772 (8th Cir. 1998) (interpreting similar forfeiture authority for RICO violation, holding, "the better view is the one that defines proceeds as the gross receipts of the illegal activities); *United States v. Huber*, 404 F.3d 1047, 1058 (8th Cir. 2005) (defendant was not entitled to offset expenses, "even if the expenses were legitimately incurred by Huber, they would not reduce the amount subject to forfeiture"); *United States v. Hively*, 437 F.3d 752, 763 (8th Cir. 2006) (same); *United States v. Lo*, 839 F.3d 777, 792-94 (9th Cir. 2016) (all funds from defendant's fraud scheme were subject to forfeiture on conviction for mail and wire fraud, rather than only the amounts specified in counts of conviction).

## II. DIRECTLY FORFEITABLE PROPERTY SEIZED FROM BOCK IS SUBJECT TO FORFEITURE

The following property is subject to forfeiture because it constitutes or is derived from proceeds of the wire fraud conspiracy and scheme for which Bock was convicted:

1. $3,506,066.80 seized from Bank of America account No. 374004673156, held in the name of Feeding Our Future DBA Teaching Our Future;

2. $6,347.85 seized from US Bank, account No. 104791224223, held in the name of Aimee Bock;

3. $179,455.87 seized from US Bank, account No. 204788895306, held in the name of Aimee Bock;

---

defendant is convicted of an offense for which civil forfeiture is authorized, as it has done here. ECF No. 57, Forfeiture Allegations. *See, e.g.*, *United States v. Jennings*, 487 F.3d 564, 583-84 (8th Cir. 2007) (affirming money judgment forfeiture based on mail fraud conviction pursuant to 18 U.S.C. 981(a)(1)(C) and 28 U.S.C. § 2461(c)); *Adetiloye*, 716 F.3d at 1041.

4. 2013 Porsche Panamera, VIN: WP0AA2A79DL015044, registered to Aimee Bock;

5. $13,462.00 in U.S. Currency seized from Aimee Bock on January 20, 2022;

6. Miscellaneous electronics seized from 3055 Old Highway 8, St. Anthony, Minnesota, on January 20, 2022, as described in the attached Appendix;

7. Miscellaneous clothing, accessories and jewelry seized from 13299 Bronze Parkway, Rosemount, Minnesota (the residence of AIMEE BOCK), on January 20, 2022, as described in the attached Appendix; and

8. Miscellaneous electronics seized from 13299 Bronze Parkway, Rosemount, Minnesota (the residence of AIMEE BOCK), on January 20, 2022, as described in the attached Appendix.

The factual basis for the forfeiture of each of these items of property is set forth in detail in the accompanying Declaration of FBI Forensic Accountant Pauline Roase. As is explained in detail in that Declaration, the assets above are subject to forfeiture because they constitute or are derived from proceeds traceable to the wire fraud scheme and conspiracy for which Bock was convicted. They are all traceable to Federal Child Nutrition Program funds, and there is no other likely source from which Bock would have acquired them. As a result, they are subject to forfeiture from Bock.

## III.   A MONEY JUDGMENT FORFEITURE SHOULD BE ENTERED AGAINST BOCK.

### A. Personal Money Judgments Forfeitures are Authorized in Criminal Actions.

Entry of a personal money judgment forfeiture is specifically authorized by Fed. R. Civ. P. 32.2(b)(1), and such orders have been repeatedly upheld. *See, e.g., United States v. Johnson*, 956 F.3d 510, 518 n.5 (8th Cir. 2020) (affirming $2.1 million money judgment forfeiture, with defendant receiving credit against that total for the value of

forfeited assets); *Peithman*, 917 F.3d at 652 (affirming money judgment forfeiture imposed under 18 U.S.C. § 981(a)(1)(C), while remanding for a redetermination of the amount of the money judgment issued under 21 U.S.C. § 853), cert. denied, 140 S. Ct. 340 (2019); *United States v. Gregoire,* 638 F.3d 962, 971-72 (8th Cir. 2011) (money judgment forfeiture permitted based on mail fraud conviction; no jury determination required for amount of money judgment forfeiture); *Jennings*, 487 F.3d at 586 (affirming money judgment for amount of proceeds defendant derived from "honest services" mail fraud scheme).

In assessing money judgment forfeitures, courts have considered whether the defendant was a leader and exercised dominion and control of the proceeds of the scheme. *United States v. Young*, 108 F.4th 1307 (11th Cir. 2024) (affirming money judgment forfeiture against ringleader of health care fraud kickback scheme for all proceeds of the scheme, even if she shared a portion with co-conspirators); *United States v. Scarfo,* 41 F.4th 136, 218 (3d Cir. 2022) (*Honeycutt*[2] does not bar holding leader or

---

[2] The Eighth Circuit has held that the limitation against joint and several forfeiture liability under the Controlled Substances Act established by *Honeycutt v. United States,* 137 S.Ct. 1626 (2017), does not apply to forfeiture orders entered under 18 U.S.C. § 981(a)(1)(C). *Peithman,* 917 F.3d at 652-653. Some circuits disagree with this conclusion and apply *Honeycutt* to forfeitures under § 981(a)(1)(C). *E.g., United States v. Cline,* __ F.4th __, 2025 WL 2414232 (10th Cir. Aug. 21, 2025). But even those circuits that disagree with *Peithman* hold that a money judgment forfeiture order against a ringleader or criminal mastermind may include funds they ultimately paid to others. *E.g., Young,* 108 F.4th at 1327-28; *Scarfo* 41 F.4th at 218. Regardless, Bock controlled the funds FOF received, and through this Motion the Government includes only the funds at FOF that remained under her control and the funds she personally obtained or disbursed for her benefit.

organizer jointly and severally liable because he has "exercised dominion and control over the entirety of the proceeds reaped from the scheme").

"[T]he law does not demand mathematical exactitude in calculating the proceeds subject to forfeiture. . . Rather, district courts may use general points of reference as a starting point for a forfeiture calculation and make reasonable extrapolations supported by a preponderance of the evidence." *Peithman,* 917 F.3d at 651 (quoting *United States v. Prather,* 456 F.App'x 622, 626 (8th Cir. 2012)).

## B. The United States is Entitled to a $5,241,522.79 Money Judgment Forfeiture Against Bock Pursuant to 18 U.S.C. § 981(a)(1)(C).

Bock's wire fraud convictions involved a massive fraud scheme through which the defendants collectively obtained millions of dollars of illicit proceeds.[3] As was shown at trial, Bock was the leader of this fraud scheme. She alone controlled FOF's bank account, and she determined where all of the fraud proceeds that FOF received were paid. She treated those funds as if they were hers to distribute as she wished without regard to whether the recipient had actually distributed food or provided labor or materials as invoiced. As a result, she paid her co-conspirators, live-in boyfriend, and herself using money that should have gone to feeding children.

Evidence introduced at trial included bank account records and schedules for Bock, FOF and other entities she owned, controlled or benefitted from. In support of this motion, FA Roase compiled a spreadsheet detailing the fraud proceeds that the

---

[3] The United States is basing its requested money judgment forfeiture on only the Wire Fraud Conspiracy and Wire Fraud Counts (Counts 1, 2, 4, 5, 12).

United States requests be included in Bock's money judgment forfeiture as proceeds traceable to the fraud scheme. Roase Decl. Ex. J

As **Exhibit J** shows, Bock obtained at least $5,241,522.79 through the fraud scheme. This sum includes the following categories of proceeds: (1) $3,506,066.80 seized from Feeding Our Future's bank account; (2) the $310,000 kickback payment from Cosmopolitan Business Solutions LLC for the non-functioning daycare center; (3) $260,241.90 of deposits into Bock's personal bank accounts from Feeding Our Future; (4) $103,600.00 of deposits from food program participants to School Age Consultants; (5) $110,670.05 disguised as rent payments for 1504-1506 Southcross Drive W (the site of Bock's alleged daycare center); (6) $871,513.78 of deposits made to Handy's Helper LLC from FOF; and (7) $79,430.26 of alleged wages paid to Empress Watson by FOF.

The basis for each category of proceeds is set forth in detail in the Roase Declaration. *Id.* ¶¶ 51-61. These sums are also consistent with trial testimony, which showed that Bock was a leader of the fraud conspiracy and that FOF was overwhelmingly funded by fraud proceeds. The categories are summarized below.

As shown at trial and explained in FA Roase's Declaration, Bock controlled FOF's bank account. The funds seized from that account are entirely traceable to fraud proceeds. *Id.* ¶¶ 9-16. Because those funds are being forfeited as fraud proceeds, their inclusion in the money judgment forfeiture is also appropriate for accounting purposes, as they will be credited against Bock's money judgment forfeiture.

The money judgment also correctly includes the value of categories (2) and (4): the $310,000 kickback payment Bock received from Abdulkadir Salah/Cosmopolitan Business Solutions, and the kickback payments from fraud scheme participants to Bock, through School Age Consultants, LLC, for an alleged manual. *Id.* ¶¶ 55, 57. As shown in the Roase Declaration and at trial, Bock would not have received these payments but for the fraud scheme. They are, therefore, proceeds traceable to that scheme. In addition, they were almost certainly made entirely with fraud proceeds.

Categories (3) and (5) above are properly included because those are funds Bock paid herself, directly or indirectly, from the FOF bank account. Category 3 are funds she paid to herself directly, using overwhelmingly fraud proceeds, despite having engaged in fraud since the inception of the scheme. And Category 5 comprises funds FOF paid to the landlord of the site of the non-functional daycare center Bock owned through The Learning Journey, which she later sold in a kickback payment. These funds were also fraud proceeds that benefitted Bock rather than FOF, as she kept all of the money from the sham sale of the daycare.

Lastly, items (6) and (7) are payments Bock directed to her live-in boyfriend, Watson, using FOF money traceable to the fraud scheme. *Id.* ¶¶ 59-61. These funds are appropriately included because they were made from the FOF account overwhelmingly funded with fraud proceeds. Bock directed these grossly excessive, sham payments to her live-in boyfriend, which plainly benefitted Bock both personally and financially. And those payments underline Bock's ultimate control of FOF's bank account. Her movement of those funds to her live-in boyfriend for her own benefit

without regard to any legitimate function of FOF further demonstrates the fact that those funds were fraud proceeds Bock controlled and disbursed for her own ends.

As stated in the Roase Declaration, the Government is seeking only a limited subset of the total sum of fraud proceeds FOF received. This limitation will avoid possible double-counting of funds paid to other defendants and included in their forfeiture orders. The above-described amounts that make up the money judgment forfeiture are all property that Bock controlled, personally received, or disbursed for her own benefit, including funds she sent to herself and her live-in boyfriend.

Accordingly, a money judgment forfeiture in the amount of $5,241,523.79 against Bock is appropriate. As with all other defendants, Bock would receive a credit against this total for the net value of all property that is forfeited from her in connection with this case.

## IV.  A GENERAL ORDER OF FORFEITURE SHOULD BE ENTERED AGAINST BOCK.

The United States also requests that a general order of forfeiture be entered against Bock pursuant to Fed. R. Crim. P. 32.2(b)(2)(C). A general order of forfeiture, which is expressly authorized by the Federal Rules of Criminal Procedure, allows the government to seek the forfeiture of directly forfeitable property identified after the date of sentencing:

> **(C) General Order.** If, before sentencing, the court cannot identify all the specific property subject to forfeiture or calculate the amount of the money judgment, the court may enter a forfeiture order that:
>
> (i)    lists any identified property;

(ii)    describes other property in general terms;

(iii)    states that the order will be amended under Rule 32.2(e)(1) when additional specific property is identified or the amount of the money judgment has been calculated.

Fed. R. Crim. P. 32.2(b)(2)(C).

The government requests that the preliminary order of forfeiture include a general order of forfeiture as provided for in Fed. R. Crim. P. 32.2(b)(2)(C). Entry of a general order of forfeiture will allow the government to pursue directly forfeitable assets if any are identified after sentencing. Preserving the government's right to seek the direct forfeiture of assets based on evidence that such assets are traceable to the fraud scheme would allow the government to clear title to such assets and seek to recover proceeds that have been transferred to third parties. *See* 21 U.S.C. § 853(c) (codifying the relation-back doctrine). A general order of forfeiture will provide an important tool in addition to the money judgment forfeiture requested above.

## V.    THE GOVERNMENT IS ENTITLED TO DISCOVERY TO LOCATE ASSETS SUBJECT TO FORFEITURE.

The United States also requests entry of an order pursuant to Fed. R. Crim. P. 32.2(b)(3) authorizing it to conduct discovery for the purpose of identifying and locating additional assets subject to forfeiture constituting or derived from proceeds Bock obtained directly or indirectly from the wire fraud scheme, or assets of Bock that may be substituted up to the value of the money judgment forfeiture. Rule 32.2(b)(3) authorizes the government, upon the entry of a preliminary order of forfeiture, to "conduct any discovery the court considers proper in identifying, locating, or disposing

of the property" that has been forfeited to the United States. Such discovery may include the taking of depositions of witnesses. *See* 21 U.S.C. § 853(m); *United States v. Saccoccia*, 898 F. Supp. 53 (D.R.I. 1995) (government can take depositions for the purpose of locating assets controlled by the defendant that are subject to forfeiture). In addition, the reference in Rule 32.2(b)(3) to "any discovery the court considers proper" necessarily permits the court to authorize discovery under the Federal Rules of Civil Procedure. Such discovery includes but is not limited to the authority to issue a request for documents to a party under Rule 34 and to a non-party under Rules 34(c) and 45.

The United States also requests that the Court retain jurisdiction over this action pursuant to Rule 32.2(e) to forfeit any subsequently discovered directly forfeitable or substitute property, and to dispose of any third-party claims to such assets.

### III. CONCLUSION

For the foregoing reasons, the United States moves this Court for a Preliminary Order of Forfeiture.

Respectfully submitted,

Dated: 12/19/2025

DANIEL N. ROSEN
United States Attorney

*s/Craig Baune*
BY:  CRAIG R. BAUNE
Assistant U.S. Attorney
Attorney ID No. 331727
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Phone:  612-664-5600
Craig.baune@usdoj.gov